Case number 20-1183, American Federation of Government Employees, Local 3690 Petitioner v. Federal Labor Relations Authority. Mr. Davis for the petitioner, Ms. Blackadar for the respondent. Mr. Davis, good morning. Good morning, Your Honor. May it please the court. My name is Joshua Davis and I'm here on behalf of the American Federation of Government Employees, Local 3690 Petitioner v. Federal Labor Relations Authority, as laid out by the United States Supreme Court. Further, I come to you, Your Honor, to discuss the Federal Labor Relations Authority, who from here on out, I'll just refer to as the authority, the authorities patent refusal to follow the Steelworkers Trilogy as laid out by the United States Supreme Court. I come to let this court have its say on the practice known as augmentation. This is a practice that has affected the institution and the workers that I represent greatly. And it's a practice that was explained in the briefs, but for brevity's sake, where the Bureau of Prisons takes teachers and turns them into maximum security prison guards and the like. I think the first thing and the most important thing to address this morning is that this court does have jurisdiction to hear this argument. The issue of the memorandum of understanding was brought before the was addressed before the authority and the authority's slight mention and what seems to be acceptance of the repudiation of the memorandum of needs to be in order to come before this court. Now, but you did not counsel, you did not litigate this in, in, in allege an unfair labor practice before the arbitrator, correct? We did not use the words unfair labor practice. We used breach of the memorandum of understanding. Now, under the authority precedent, there can be two sorts of repudiation, an explicit or an implicit. In this case, it's the union's position that there was an implicit repudiation. And the authority's test for that is the nature of the violation and whether the violation goes to the heart of the party's negotiated agreement. Um, in this case, this MOU, uh, which is petitioner's appendix, page 197, it was made after the union and the agency had collectively bargained their initial agreement. And on number two of that MOU, it clearly states unless mutually agreed, all matters brought forward at FCI Miami will be negotiated in the order based upon the date. The intent to negotiate was filed. Once an intent to negotiate has been filed, the agency and the union will mutually exchange proposals within 45 days. If an issue of negotiability is raised by the agency, following the exchange of proposals, the agency will provide the union with written notice of the issues deemed as non-negotiable. This notice will include specific references, case law, master agreement as to why the specific issue has been deemed non-negotiable. The union at FCI Miami, relying on this memorandum of understanding, which was entered into between the parties, attempted to raise the issue of augmentation with the agency. But the agency did not follow this contract at all. All they said was, we're not going to negotiate. They provided no case law. They provided no insights. They did not follow this. And when it gets to the second branch of the authorities test for repudiation, Article 2 of this MOU goes to the heart of the entire agreement. Because without knowing what matters are on the table in order to negotiate according to the rules for the rest of the MOU, there is no logical way for the rest of the agreement to exist. And it's a well-recognized canon of statutory and contractual interpretation that would give meaning to as much of the document as we can. Mr. Davis, if I could interrupt for a moment. How much of what you just said was argued to the authority? In the exceptions, Petitioner's Appendix 148, and the opposition to the exceptions, the very first thing that the union really argues is that, hey, this has been decided on separate and independent grounds other than what was accepted to by the agency. And therefore, this needs to be addressed. The union cites, actually, on 148, that... I'm looking for the actual word repudiation. The union in its opposition, I've added. It's actually Petitioner's Appendix 149, the last paragraph of the page. The union actually cites in comparison a FLR case where the authority found that the agency had, in fact, violated 7116A1 and 5 of the statute after it unilaterally repudiated the party's local memorandum of understanding. This court's precedents and this court's holdings, even as recently as the NLRB case that came out a couple of days ago, show us that this was enough to put the authority on notice, that this was an appealable ground. And the repudiation of an MOU is, by definition, a statutory unfair labor practice. So, I think that was, it's the union's position that that was sufficiently raised to the authority. Thank you. Now, the other main argument for why this court has jurisdiction is because the authority clearly, clearly has decided to exceed its statutory permissions given to it by 7122. These require the authority to defer arbitration awards on grounds similar to those in the private sector rely on the Steelworkers Trilogy, MISCO, Garvey. And the Supreme Court has been very clear that if the arbitrator is even arguably construing the contract, this is the deference owed to his decision. And when you look at the authority's decision where they expressly say, and then use this decision as precedent to continue to say, that we don't owe the same amount of deference to an arbitrator because public sector is different. This is clearly in excess of their statutory authority. And by doing that, that would give this court jurisdiction to hear this. It would also make their decision arbitrary and capricious, because when you look at this court's ruling in National Weather Service, this court was very clear to the authority as to what standard it must apply. And it was the standard found in Steelworkers. So, when you get past those two jurisdictional issues, and I know I'm running a little short on time at this point, and you really get to the merits, the authority then decides that a binding past practice can't create a condition of employment, which is a private sector labor law concept that has been around for 40 or 50 years, which all of a sudden led the authority to pursue a faulty analysis of why the arbitrator's decision was not within the essence of the contract. Those are the main points that I wanted to make, and I know I'm over time now, so I'd like to hand it to Ms. Blackadar for... All right, Mr. Davis, we'll give you a couple minutes. Ms. Blackadar. Thank you, Your Honors, and may it please the court. Sarah Blackadar for the respondents of the Federal Labor Relations Authority. The authority respectfully requests the court dismiss the union's petition for lack of jurisdiction or any alternative to deny it entirely on the merits. The case lacks jurisdiction for three reasons. First, the union has waived a number of the arguments that it seeks to bring before this court, and under section 7123C, those arguments are not properly before this court's jurisdiction. Second, under section 7123A, the statute clearly precludes judicial review of authority decisions that address arbitration awards that do not involve an unfair labor practice. This decision does not involve an unfair labor practice. And finally, the union's efforts to invoke a lead-em-esque-like claim of jurisdiction or jurisdictions similar to that in the Customs Service case are inapplicable here. Even if the court reached the merits of this petition, though, there is simply no grounds to overturn the authority's decision. The court has twice interpreted Article 18 and come to the clear conclusion that it states that shift reassignments and post changes are governed by Article 18. That is exactly what the union sought to negotiate over here, and the only way the arbitrator could reach a decision that allowed or required the agency to bargain anew was to write an entirely new contractual term into the party's agreement, not interpret the agreement as it exists. This is at the heart of an essence exception, and that is the reason the authority set aside this decision. But looking first to some of the arguments that were brought up here again today, the union has simply not raised these unfair labor practices either at arbitration or before the authority. It never argued that the agency's refusal to negotiate constituted an unfair labor practice under the statute, and it never even attempted to argue that the agency repudiated the memorandum of understanding before the arbitrator or the authority. This is quite clear because, as the union just pointed to, one page before in petitioner's appendix on page 148, the union is clearly stating that the arbitrator found that the agency violated four provisions of the party's agreement and the local memorandum of understanding. Therefore, it is quite clear both their understanding, the agency's understanding, the arbitrator's understanding, and the authority's understanding of that award was it was based purely on contractual violations. This point, even if the union could have been more successful, although that is still doubtful, by bringing an unfair labor practice claim such as repudiation, it did not do so. Where there was no unfair labor practice to adjudicate before the arbitrator or the authority, this decision is barred by section 7123, but these arguments are also barred by section 7123c because they're new and raised to the court for the first time. The one reference to one case... Yes, your honor. The court, this court in BOP1 and BOP2 addressed an issue very similar to the issue that the arbitrator and authority addressed in this case, and we had jurisdiction in BOP1 and BOP2. So, can you talk to us a bit about why we don't have jurisdiction here when we did have jurisdiction there? Yes, your honor. In those two cases, we were talking about an unfair labor practice. That is evident from the fact that the issue at stake in both cases was the application of the covered by doctrine, which is a doctrine that relates to unfair labor practice cases. Now, the authority did cite to the court's decision in both of those cases because, particularly in BOP2, the court was explicit that this isn't just a nuance of unfair labor practice law. This article is clear on its face what it means and what it covers, and it needs to be given that effect, and it chastised the authority for failing to understand and do that in a number of arbitration awards that were reviewed between BOP1 and BOP2. That's the only reason it comes up in this case because the authority then goes on to explain that, given this explicit and clear language in Article 18, the arbitrator's decision has to be based on his finding of a new contractual term, which the arbitrator created based on past practices, and then awarded the remedies that he did in the arbitration award based on that new contractual term. The court has expressed in private sector labor law cases a clear instance of the arbitrator dispensing his own brand of industrial justice, departing entirely from the terms of the party's contract, and writing his own. And for that reason, it had to be set aside for failing to draw its essence from the party's agreement. But returning again to some of the other issues that our party has raised here, for example, even this argument that the authority can't deviate in any way whatsoever from steelworkers is new. And even though this was an issue that wasn't in play before the authority's decision, the court has repeatedly held that parties need to file motions for reconsideration with the authority even to address sua sponte arguments before they can bring their case. And so again, under 7123. A, essentially the arguments that that the union is now relying on to set aside, the award are outside this court's jurisdiction. But going more specifically to the heart of the issue here, where a arbitration award and an authority decision so clearly rest upon contractual findings. This case easily fits into overseas education, the court's earliest precedent on this issue, where the conduct could have been but was not characterized as an unfair labor practice by the parties during the arbitration. There is no jurisdiction in this court. Moreover, the court has been clear that a mere passing reference or the party's own efforts to raise ULP after the arbitration are not sufficient is important. What is essential and important is what is in the arbitration award, and what is in the authority's decision. And so for that reason, the court has not does not have jurisdiction in this case, even if there were some glancing references to unfair labor practices. In the exceptions briefing, they are not in the arbitration or they're not in the authority's decision. And thus, there is no jurisdiction in this case. Would you distinguish this National Weather Service employees from 2020? Yes, Your Honor, in National Weather Service, the union characterized the exact same conduct, both explicitly as an unfair labor practice, when it brought its grievance to arbitration, and as a contractual violation. So although they were talking about was the exact same alleged wrongdoing by the agency, they characterized it explicitly as both types of violations. When the arbitrator found that there was a contractual violation, but no unfair labor practice, the union filed exceptions with that determination. And the authority then decided whether or not the arbitrator was correct on the unfair labor practice issue, resulting in an authority decision that addressed both contractual violations and unfair labor practices. The union brought the case to this court and the court said that as long as there is a unfair labor practice that is in the decision, the entire decision is on appeal. Here, there is no unfair labor practice in the decision, so none of the decision can be on appeal. All right, thank you. Your Honor, as I've noted here, the authority's decision is clearly beyond the jurisdiction of this court as it addresses only contractual claims brought through arbitration. Further, the arguments that the agency or the union brings to the court today are new in their brief for the statute from this court's jurisdiction. Finally, even if the court were to reach the merits in this case, there is simply no grounds to overturn the authority's decision as it has correctly implemented the essence exception that exists in the private sector. And it clearly did not depart from or say that it would no longer use steelworkers as a guide. For these reasons, there's no grounds for jurisdiction under LEADM or custom service where the statutes being conditions and they were applied reasonably as the authority has done throughout its history and not set aside the precedent that the union says they do. For these reasons, we ask first that the court should simply dismiss this petition for lack of jurisdiction and barring that to deny it entirely on the merits. All right, thank you. Mr. Davis, why don't you take two minutes? Thank you, Your Honor. A few things I'd like to address. First, the arbitrator's reward was based on multiple separate and independent grounds. So while the authority used statutory unfair labor practice law to support its decision, Justice Kavanaugh, or then judge, Justice D'Orfeo, pointed to that as an indicia of an unfair labor practice being involved. Moreover, when you look at the separate and independent grounds, this case can be distinguished from BOP 1 and BOP 2 on the facts that Article 27, the health and safety of workers and the after the collective bargaining agreement, are both separate distinct grounds. And by the authority erroneously finding that the arbitrator had relied on past practice and therefore the MOU analysis wasn't needed, they endorsed the repudiation of the MOU. That is sufficient to give this court jurisdiction. And once this court has jurisdiction, under National Weather Service, it's clear the authority's decision was arbitrary and capricious. In the petitioner's reply brief, we pointed that the FLRA has since, in multiple footnotes, cited to this case addressing the deference owed to arbitrators in the public sector. They have made it a point that as far as steelworkers goes, it's not the same for the public sector as it is the private sector. All right, thank you. Madam Clerk, if you would call the next case.
judges: Henderson, Wilkins, Walker